## BOUND v. SOUTH CAROLINA RY. CO. et al.

### CHAMBERLAIN v. SWAN.

#### (Circuit Court, D. South Carolina. August 31, 1893.)

1. **INTOXICATING LIQUORS—SOUTH CAROLINA "DISPENSARY ACT"—SEIZURE WITHOUT WARRANT.**

    The South Carolina "dispensary act," approved December 24, 1892, (section 25,) providing that intoxicating "liquor intended for unlawful sale in this state may be seized in transit and proceeded against as if it were unlawfully kept and deposited in any place," does not authorize a constable to seize without warrant a package of liquor shipped from without the state, and stored within the state, prior to the statute taking effect, in the warehouse of a railway company, in the charge of a receiver appointed by a United States court, and kept therein without concealment.

2. **SAME.**

    To authorize a seizure under this section, it was essential that it should appear that the goods were in transit, and were intended for unlawful use within the state; the determination of these facts by the officer, upon his own suspicion, being insufficient.

3. **SAME—LIQUORS INTENDED FOR UNLAWFUL SALE.**

    Section 2 of the act, providing that any package containing intoxicating liquors, without having attached thereto the certificate of a county dispenser, and which shall be brought into the state, or shipped out of the state, or from place to place within the state, by any common carrier, shall be regarded as intended for unlawful sale, is a rule of evidence prescribed only in proceedings against carriers violating the section, and had no application to the package in question, which was brought into the state prior to the time the act took effect, and thereafter, to the time of seizure, kept in the warehouse.

4. **SAME—CONSTRUCTION OF ACT.**

    Nothing contained in the act expressly authorizes search and seizure without warrant, and the court is not disposed to so enlarge the tenor of the act as to construe it as authorizing such search and seizure.

5. **SAME—CONSTITUTIONAL LAW.**

    An express authorization in the act to make search and seizure without warrant would be unconstitutional, as in violation of the state bill of rights, art. 1, § 22, prohibiting unreasonable searches or seizures, and prescribing the formalities requisite to the issue of warrants.

Petition by D. H. Chamberlain, receiver of the South Carolina Railway Company, appointed in the suit of Frederick W. Bound against said company and others, and rule thereon to show cause why C. B. Swan, a constable, should not be attached for contempt, in taking a package of liquor from the custody of the petitioner. Upon demurrer to the petition, supported by answer, the rule was made absolute, and the respondent adjudged guilty of contempt.

Jos. W. Barnwell, for South Carolina Ry. Co.

D. A. Townsend, Atty. Gen., for respondent.

SIMONTON, District Judge. This case comes up on a petition and the rule thereon to show cause why the respondent be not attached for contempt of this court and upon demurrer to the petition, supported by an answer. The facts of the case, as shown by the papers, are these: On the 12th April, 1893, the South Carolina Railway Company, a corporation in the charge of a receiver appointed by this court, and a common carrier, received from a connecting road a barrel of liquor marked "B," shipped by Lowenstein Bros., citizens of North Carolina, from Statesville, in that state, and consigned to Charleston, S. C. The barrel, after its arrival, was stored in the warehouse of the railway company, awaiting the ascertainment of the person to whom it was consigned. Owing to some confusion, arising from the obscurity of the bill of lading, or from the marks on the barrel, there was much difficulty in discovering this fact, and the matter was thoroughly investigated. It now appears that the real consignee was Justin P. O'Neill, of Charleston, agent for the shippers. Pending this investigation, and while the goods were thus in the warehouse of the receiver, freight thereon being unpaid, and before any conclusion had been reached as to the disposition to be made of the goods, C. B. Swan, the respondent, entered the warehouse, seized the goods, took them out of the custody of the receiver, and deposited them in the jail of Charleston county, in the care of the sheriff. This seizure was on 1st August, 1893. The respondent showed no authority from either the consignee or consignor of the goods, nor did he produce any warrant, by virtue of which the search and seizure were made. When questioned as to his authority, he produced his commission as a constable of the state. His suspicions had been excited respecting this barrel,—it having been, presumably from necessity, removed from one part of the floor of the warehouse to another,—and he acted on his suspicions. At the hearing it was admitted that his course was of his own motion, without instructions, certainly, from any one in the legal department of the state, and in all probability he was without instructions from any other person. After seizure the goods remained in the place of deposit selected by Swan, without any proceeding or application whatever, until the issuance and service of this rule; that is to say, from August 1st to August 8th.

Were this a simple case of interference with property in the hands and custody of this court, without notice to it, and without action on its part, its settlement would be easy. Were it even based upon a charge of violation of the law on the part of the receiver, and sustained by a mandate issuing from any proper authority, the court would not be slow to believe that the manner of the execution of the mandate arose from inadvertence, and would lend its aid to an investigation of the charge, and a due execution of the law. As a common carrier, the receiver is bound to respect and obey the laws of the state. He and the court from whom he holds his appointment are servants of the law, exceptionably bound to pay it the utmost deference and respect. But the

real issue in this case is vastly more important than an interference with property in the hands of the court. It is far-reaching in its consequences, and concerns, not only the receiver, but every other citizen.

Has any constable the right, without warrant, to search premises, and to seize property, when he suspects that a violation of the law is intended? The learned attorney general, in an argument characterized by ability and great fairness, admitted that, unless express authority was given him in the statute, he could not have acted legally without a warrant. He relies upon cases in Massachusetts and Vermont in which this point is clearly stated. Upon examining these cases,—and no other reference to them is necessary,—it was found that the statute, in so many words, gave express authority to act without a warrant in certain exceptional cases. When he sought this authority in the statute of South Carolina, he relies on the words of the twenty-fifth section:

"All such liquors intended for unlawful sale in this state may be seized in transit and proceeded against as if it were unlawfully kept and deposited in any place."

This language certainly does not expressly authorize seizure without warrant; and before they can be seized, even under this section, it must appear that the goods were in transit, and that they were intended for unlawful sale in this state,—two facts, essential to the seizure, surely not determinable by a constable in his own mind, upon his own suspicion. The dispensary act itself creates the presumption against a package of intoxicating liquor that it is intended for unlawful sale in but one place only. The second section says:

"Any package containing intoxicating liquors without such certificate [the certificate of a county dispenser] which shall be brought into this state or shipped out of the state or shipped from place to place within the state by any railroad, express company, or other common carrier, shall be regarded as intended for unlawful sale."

This is a rule of evidence prescribed only in civil or criminal proceedings against the common carrier transporting liquors without such certificate and the language can be extended to no other case. It must be remembered that this section applies only to intoxicating liquors which shall be brought into the state, etc., after the act went into operation, 1st July, 1893, and has no application to this package, which was brought into the state 12th April, 1893, and thereafter was neither being shipped out of the state nor from place to place within the state, but was kept in the warehouse, and held there. The twenty-second section of this act is the key of it. It says:

"All places where intoxicating liquors are sold, bartered, or given away in violation of this act or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage or where intoxicating liquors are kept for sale, barter, or delivery in violation of this act are hereby declared common nuisances."

The draughtsman of this section, with great care, adds:

"And if the existence of such nuisance be established either in a civil or a criminal action upon the judgment of a court or judge having jurisdiction, finding such place to be a nuisance, the sheriff, his deputy, or any constable of the proper county or city where the same is located, shall be directed to shut up and abate such place by taking possession thereof if he has not already done so under the provisions of this act and by taking possession of the intoxicating liquors found therein."

If this act dealt with intoxicating liquors as if they were a deadly poison, whose presence is noxious, if the danger from them was treated as of the immediate character attending a ferocious animal at large, or the seeds of a pestilence, then the language of the statute might receive the most enlarged construction in seeking to abate such a fearful nuisance. But it must be borne in mind that from the whole tenor of this act the use of intoxicating liquors as a beverage by the mass of the community is recognized, and its use for this purpose is not discouraged. The sale of it is to be conducted openly, and in public places. The whole purport, meaning, intent of the act is to place such sale in the hands of certain persons, recognized and appointed by the highest functionaries in this state, and to bring it within reach of the people. Even upon general principles, it would be impossible to enlarge the tenor of the act, and to give enormous power to the most subordinate class of officials known to the law, and to authorize such search and seizure by them without warrant. Deep down in the heart of the Anglo-Saxon race is the abhorrence of every such exercise of power almost absolute, and such exercise is never tolerated except in the most extreme and urgent cases, when the safety of the people becomes the supreme law. But if the statute did, in so many words, expressly authorize the search and seizure without warrant, will this justify the respondent in this case?

The constitution of South Carolina, in its bill of rights, (article 1, § 22,) declares:

"All persons have a right to be secure from unreasonable searches or seizures of their persons, houses, papers or possessions. All warrants shall be supported by oath or affirmation and the order of the warrant to a civil officer to make search or seizure in suspected places or to arrest one or more suspected persons or to seize their property shall be accompanied with a special designation of the persons and the objects of search, arrest or seizure. And no warrant shall be issued but in the cases and with the formalities prescribed by the laws."

This is the limit of the power of the legislature in searches and seizures.

In the case now before us there is not even the excuse for haste. The goods were stored and kept in a warehouse, not at a place for sale. No concealment whatever was practiced. In his answer the respondent says that for several days he saw the package, and watched it. Any notification to this court would have absolutely secured him from any removal of it. Within his reach, at any hour of the day, he could have gone before any justice or judge, and could have obtained, or at least could have sought, a warrant. The process of law was within his reach. Even when he searched and

seized the package, he openly disregarded the law. For eight days he remained inactive, taking no steps whatever to justify, support, or legalize his action. It does not appear even that he reported it to any one. His contempt of private rights went far beyond his disregard of the existence and authority of this court.

It is ordered that the rule be made absolute, and that the respondent, C. B. Swan, be adjudged guilty of a contempt of this court.

It is further ordered that the marshal of this district take him in custody, and that he be imprisoned in the jail of Charleston county until he returns to the custody of the receiver the barrel taken by him from the warehouse without warrant of law, and, when that has been surrendered, that he suffer a further imprisonment thereafter in said county jail for three months, and until he pay the costs of these proceedings.